ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Melwood Horticultural Training Center, Inc. ) ASBCA No. 60666
)
Under Contract No. W911S0-11-F-0040 )

APPEARANCES FOR THE APPELLANT: Larysa Kautz, Esq.
  General Counsel
Christie Roberts, Esq.
  Assistant General Counsel

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
  Army Chief Trial Attorney
MAJ David H. Stem, JA
  Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE WOODROW
ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

This appeal arises out of a contract between the United States Army (Army) and Melwood Horticultural Training Center, Inc. (Melwood or appellant) for base operations facility maintenance services at Fort George G. Meade (Fort Meade or FGGM) in Maryland.

Appellant's request for additional funds in ASBCA No. 60666 seeks to recover costs for three separate matters: (1) reimbursement for retention bonuses; (2) reimbursement for subcontractor payments associated with alleged breaches of the contract; and (3) an amount "TBD" (to be determined) for lost profits associated with services procured from vendors other than appellant, allegedly in violation of the terms of the contract. The Board consolidated this appeal with ASBCA No. 60323* and appellant subsequently filed a consolidated complaint.

The Army moves to dismiss ASBCA No. 60666 for lack of jurisdiction. The government challenges the Board's jurisdiction on three grounds: (1) that the contracting officer (CO) never issued a final decision as to appellant's claim; (2) that appellant's claim fails to state a sum certain; and (3) that appellant's claim fails to state a claim on which relief may be granted. Although appellant's request for additional relief

_____

* While ASBCA No. 60666 is consolidated with ASBCA No. 60323, this decision
    pertains only to the government's motion to dismiss in ASBCA No. 60666.
    However, the Rule 4 and supplemental Rule 4 references in this decision pertain
    to the submittal filed under ASBCA No. 60323.

contains specific dollar amounts for some elements, the total amount of the request is an unspecified amount "to be determined" and a total amount cannot readily be calculated by simple arithmetic. Accordingly, we hold that we lack jurisdiction to entertain appellant's request in ASBCA No. 60666, because it fails to state a sum certain.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 1 July 2011, the Mission & Installation Contracting Command, Fort Eustis, Virginia (MICC or Army) awarded Contract No. W911S0-11-F-0040 to Melwood for facilities maintenance and repair, sustainment, restoration, and modernization at Fort Meade (supp. R4, tab 5 at 1).

2. The contract incorporated by reference FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (JUN 2010), which reads in pertinent part:

> (d) *Disputes*. This contract is subject to 41 U.S.C. chapter 71, Contract Disputes. Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract.

(Supp. R4, tab 5 at 46)

3. The contract also incorporated by reference FAR 52.233-1, DISPUTES (MAY 2014), which reads in pertinent part:

> (c) *Claim*, as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a **sum certain**, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under 41 U.S.C. chapter 71 until certified. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under 41 U.S.C. chapter 71. The submission may be converted to a claim under 41 U.S.C. chapter 71, by complying with the submission and certification requirements

2

of this clause, if it is disputed either as to liability or amount
or is not acted upon in a reasonable time.

(Supp. R4, tab 5 at 46) (Emphasis added)

4. By letter dated 11 April 2016, appellant mailed (via FedEx) a package with a completed version of its "Claim: Request for Contracting Officer's Final Decision" to the CO on 14 April 2016 (supp. R4, tab 54). Also included in the letter was a signed certification in accordance with FAR 33.207 (*id.* at 9).

5. In its submittal to the CO, appellant sought the following relief:

> [R]eimbursement for $114,000.00 for Retention Bonuses paid to Melwood's key project personnel and $130,985.00 for Melwood's GFEBS subcontractor, Thompson Gray, and Melwood's IT subcontractor, Corsica. Additionally, Melwood seeks the anticipatory margin and profit associated with Fort Meade and MICC subcontracting and purchasing made outside of the designated BASOPS Procurement List provider, Melwood.

(Supp. R4, tab 54 at 1)

6. Specifically, appellant sought to recover costs for three items. First, appellant sought reimbursement for retention bonuses paid to Melwood's key project personnel in the amount of $114,000.00 plus a markup of 20.87%. Second, appellant sought reimbursement for two of Melwood's subcontractors, Thompson Gray and Corsica, in the amount of $130,985.00 plus a markup of 20.87%. The total amount for these two elements not including mark-up is $244,985.00. Third, appellant sought "anticipatory lost profits" for alleged breaches of the contract associated with subcontracting and purchasing made outside of the designated BASOPS Procurement List provider, Melwood, in an amount "TBD." (*See* supp. R4, tab 54 at 1, 354)

7. Melwood subcontracted with Thompson Gray for General Fund Enterprise Business System support (supp. R4, tab 54 at 6). Contract section C.1.9.1 explains that the General Fund Enterprise Business System (GFEBS) is the Army's automated financial management system, which replaced the Integrated Facilities System-Maintenance (IFS-M) real property management recordkeeping system in fiscal year 2011 (supp. R4, tab 5 at 130).

8. Melwood subcontracted with Corsica to provide additional Information Technology (IT) support (supp. R4, tab 54 at 6).

9. "BASOPS" stands for Base Operations Support Plan (supp. R4, tab 5). The BASOPS Procurement List, in turn, refers to the AbilityOne Procurement List (PL), a list

3

maintained by United States AbilityOne Commission of products and services designed to create work opportunities for people who are blind or who have significant disabilities. *See* FAR Subpart 8.703, Procurement List.

10. Attachment 60 to appellant's 11 April 2016 letter states that it seeks total reimbursement in the amount: "$295,892.88 + TBD" (supp. R4, tab 54 at 354):

| Retention Bonuses | $114,000 |
| IT Subcontractors (Thompson Gray & Corsica) | $130,985 |
| PL Violations | $TBD |
| Subtotal | $244,985 + TBD |
| Markup at 20.78% | $50,907.88 + TBD |
| Total | $295,892.88 + TBD |

11. Appellant mentions seven contracts, discussed in the chronology set forth in Attachment 1 to the letter, as among the contracts that the Army awarded outside the designated BASOPS procurement list, allegedly in violation of FAR 8.704, Purchase Priorities and FAR 8.706, Purchase Exceptions (PL Violations) (supp. R4, tab 54 at 8, 13, 71-72). Appellant does not set forth the dollar amount of any of these contracts (*id.* at 71-72).

12. Appellant also states that the Army awarded an additional eight contracts during 2011 through 2014 which were worth "over $28,431,350." Accordingly, it "seeks the anticipatory profit from these 15 procurement actions described above as well as any other similar inappropriate actions not fully disclosed by FGGM MICC at this time." (Supp. R4, tab 54 at 8)

13. In a letter dated 13 June 2016, the CO responded to appellant's submittal, stating that:

> Based on a review of the claim, as well as the accompanying supporting documentation, the Government cannot make a Determination regarding Melwood's claim at this time, and the purpose of this correspondence is to request specific information in order for the Government to properly address Melwood's concerns.
>
> ....
>
> This is not a final decision of the contracting officer, but rather a request for more information which, hopefully, will allow me to render an informed decision on your claim.

(Supp. R4, tab 55 at 1, 4)

4

14. The CO's 13 June 2016 response did not notify Melwood of the time within which the CO would issue a final decision (supp. R4, tab 55).

15. Melwood did not respond to the CO's request for information (gov't mot. to dismiss at 3).

16. On 16 June 2016, appellant filed a notice of appeal with the Board. Appellant's notice of appeal stated that the "inability of the Contracting Officer to issue a decision, in accordance with FAR 33.21, Contracting officer's decision, (g) is deemed to be a denial of the claim thereby authorizing Melwood to file this appeal."

17. On 13 July 2016, the Board notified the parties that appellant's 16 June 2016 notice of appeal was docketed as ASBCA No. 60666 and consolidated with ASBCA No. 60323.

18. On 28 July 2016, the government filed a motion to dismiss ASBCA No. 60666.

19. On 12 August 2016, appellant filed an amended complaint. In its amended complaint, appellant stated that it "is entitled to the anticipatory margin and profit associated with the aggregate amount of contracts and purchases made outside of the designated PL [Procurement List], which amount is $28,431,350." (Am. compl. ¶¶ 65-67)

20. On 29 August 2016, appellant filed its response to the government's motion to dismiss.

21. On 21 October 2016, the government filed its reply brief in support of its motion to dismiss.

## DISCUSSION

The government challenges the Board's jurisdiction to entertain ASBCA No. 60666 on three grounds: (1) that the CO never issued a final decision as to appellant's claim; (2) that appellant's claim fails to state a sum certain; and (3) that appellant's claim fails to state a claim on which relief may be granted. Because the threshold issue regarding our jurisdiction begins with the filing of a claim with the CO, we will first address whether appellant's 11 April 2016 submittal constituted a claim as defined by the contract, applicable regulations, and case law.

*Appellant's Claim Fails to State a Sum Certain*

Our jurisdiction under the CDA is predicated upon the filing of a claim by one of the contracting parties, 41 U.S.C. § 7103(a). The CDA does not define "claim," but the Federal Acquisition Regulation (FAR) does so. FAR 2.101 states in pertinent part as follows:

5

Claim means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, *the payment of money in a sum certain*, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. However, a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under the Contract Disputes Act of 1978 until certified as required by the Act. [Emphasis added]

This definition of "claim" also is incorporated into appellant's contract as a part of the Disputes clause, set forth at FAR 52.233-1, Disputes (SOF ¶ 3). The specific issue before us is whether appellant's letter to the CO, dated 11 April 2016, asserts a claim in a "sum certain" in accordance with this definition. If it does not, appellant has not asserted a proper claim, and we do not possess jurisdiction.

Attachment 60 to appellant's submittal states that appellant seeks total reimbursement in the amount of $295,892.88 plus an amount "TBD" (SOF ¶ 10). The specific dollar figure of $295,892.88 is the sum of the amounts for retention bonuses for Melwood employees ($114,000), IT subcontracts with Thompson Gray & Corsica ($130,985), plus a markup of 20.78 percent on both of those amounts ($50,907.88) (*id.*). In contrast, the component of appellant's request for lost profits associated with services procured from vendors other than appellant does not set forth a specific dollar amount. Instead, it states that the amount is TBD. Appellant admits as much in its response brief: "[t]he only request that does not specify the precise final monetary amount due to Appellant is for the lost profits" (app. resp. at 5).

While it is true that portions of appellant's submittal contain specific dollar amounts, the overall claim fails to state a sum certain. We decline to sever portions of the claim in order to maintain jurisdiction over the portions containing specific dollar amounts. Specifically, in *Islands Mechanical Contractor, Inc.*, ASBCA No. 59655, 17-1 BCA ¶ 36,721 at 178,809 (citing *Eaton Contract Services, Inc.*, ASBCA No. 52888 *et al.*, 02-2 BCA ¶ 32,023, *aff'd on recon.*, 03-1 BCA ¶ 32,239), we held:

> The failure to meet jurisdictional requirements remains even if, as here, the "claims" contain one component...which were stated in a sum certain but the overall "claim" is not. We will not entertain that portion of a claim stated in a fixed amount and discard the remainder, as an "entire claim is in a sum certain, or it is not."

Thus, if a portion of a claim does not contain a sum certain, the submittal to the CO does not meet the definition of a claim as set forth in the contract (SOF ¶ 3) and in FAR 2.101.

6

Appellant's argument that the amount of lost profits readily is calculable is unavailing. While a claim may be sufficient if the amount in dispute can be determined by simple mathematical calculation, this is not such a case. *See, e.g., PHI Applied Physical Sciences, Inc.*, ASBCA Nos. 56581, 58038, 13 BCA ¶ 35,308 at 173,337 ("Although the amount sought was not expressly totaled by appellant, a sum certain total is readily calculable by simple arithmetic.").

According to appellant, the amount of appellant's lost profits can be calculated with "pertinent contractual details, including cost" from the contracts the government entered into with other vendors allegedly in violation of appellant's contract (app. resp. at 5). Although appellant filed a Freedom of Information Act (FOIA) request for these contracts, it states that it "has not been successful in obtaining them" (*id.* at 6). Instead, appellant contends that the government has information in its possession and, therefore, has adequate notice of the monetary amount of appellant's "claim for anticipatory lost profits."

Appellant's argument that its anticipated lost profits can be calculated from information in the government's possession is flawed for several reasons. First, appellant has not explained – in its 11 April 2016 submittal to the CO or its brief – how the government would make such a calculation. Appellant asserts in its brief that the government is "familiar with Appellant's pricing model, including the agreed-upon mark-up for Appellant's services." (App. resp. at 7) According to appellant's argument, the government should infer that it could multiply appellant's mark-up percentage by the aggregate value of the contracts that allegedly were diverted from appellant in order to calculate appellant's anticipated lost profits. Not only must this calculation be inferred, the inputs to the calculation also must be inferred.

Second, appellant's request does not identify the specific contracts that it alleges were diverted from appellant, nor does the request set forth specific dollar amounts for the allegedly diverted contracts. In its submittal, appellant mentions seven contracts, discussed in the chronology set forth in Attachment 1 and also mentions an additional eight contracts revealed from FOIA requests. (SOF ¶ 11) Appellant states that FGGM MICC awarded these eight contracts during 2011 through 2014 and were worth "over $28,431,350.00" (SOF ¶ 12). Appellant then states that it "seeks the anticipatory profit from these 15 procurement actions described above as well as *any other similar inappropriate actions* not fully disclosed by FGGM MICC at this time" (*id.*). These statements demonstrate that the amount of anticipatory lost profits is a moving target and is based on appellant's allegations of what constitutes "inappropriate" procurement actions. It would be impossible for the government to speculate as to what contracts appellant considers to be "inappropriate."

Moreover, appellant's statements in its brief acknowledge the ambiguity in the calculation of its lost profits. Specifically, appellant states that its request is based on the amount of diverted contracts "in *excess* of $28,431,350.00," leaving open the possibility

that there is some other undisclosed amount that would serve as the basis of appellant's lost profits claim. (App. resp. at 6) Indeed, if the calculation were as straightforward as appellant claims, it could have made the calculation in its request to the CO.

Finally, appellant cannot rehabilitate its submittal to the CO by relying on information obtained during discovery (app. resp. at 5-6). While a contractor may properly amend its claim upon learning additional facts pertaining to a valid claim, *Tecom, Inc. v. United States*, 732 F.2d 935, 938 (Fed. Cir. 1984), it cannot later furnish a sum certain to "rehabilitate" an invalid claim or portion thereof. *Northrop Grumman*, 10-2 BCA ¶ 34,517 at 170,233 (citing *Eaton*, 02-2 BCA ¶ 32,023 at 158,266-67). The sufficiency of a claim is determined at the time it is submitted to the CO; if it was improperly made, the Board lacks jurisdiction. *Id.*

In summary, because Melwood's submittal to the CO in ASBCA No. 60666 is not stated as a sum certain, it does not meet the definition of a claim and, as such, we lack jurisdiction to entertain the appeal.

## CONCLUSION

For these reasons, we grant the government's motion to dismiss.

Dated: 7 June 2017

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

8

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60666, Appeal of Melwood Horticultural Training Center, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals